UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CARA TRUAX, on behalf of herself and all others similarly situated,

        Plaintiff,

v.

RLC LABS, INC.,

        Defendant.
_____/

Case No.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Cara Truax ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant RLC Labs, Inc. ("RLC" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

**NATURE OF THE ACTION AND FACTS COMMON TO ALL CLAIMS**

1. This is a class action lawsuit regarding Defendant RLC's manufacturing and distribution of two prescription thyroid medications containing Levothyroxine and Liothyronine: Nature-Throid and WP Thyroid (collectively, the "Thyroid Tablets"). Testing by the U.S. Food and Drug Administration ("FDA") has found the Thyroid Tablets to be subpotent, meaning the Thyroid Tablets contain less of their active ingredient than as advertised and as stated on the products' labeling and packaging.

2. Levothyroxine (tetraiodothyronine sodium) and liothyronine (liothyronine sodium) are generic prescription medications indicated as a replacement or supplemental therapy in patients with hypothyroidism, among other conditions. Levothyroxine was first made in 1927, and it is on the World Health Organization's List of Essential Medicines, the most effective and

safe medicines needed in a health system.  Likewise, liothyronine may be used instead of or in addition to Levothyroxine for treating thyroid disorders.  Compared to Levothyroxine, Liothyronine has a faster onset of action as well as a shorter biological half-life.

3. Defendant combines both compounds into a generic formulation, which are branded as "Nature-Throid" or "WP Thyroid."  "WP Thyroid is available in 8 strengths and only uses two all-natural inactive ingredients.  Nature-Throid is available in 13 strengths and is a low-cost option.  Both use the same active ingredient – Thyroid USP."

4. Both Thyroid Tablets are advertised as effective treatments for hypothyroidism (underactive thyroid).  "The thyroid's job is to make thyroid hormones, which are secreted into the blood and then carried to every tissue in the body.  [The] [t]hyroid hormone helps the body use energy, stay warm[,] and keep the brain, heart, muscles, and other organs working as they should."[1]  Accordingly, people with hypothyroidism may be at risk for a number of health conditions "such as obesity, joint pain, infertility and heart disease."[2]

5. Nature-Throid is advertised as "one of the first available medications for hypothyroidism."  "Defendant notes that its affordable and hypoallergenic medication remains in high demand by doctors and patients alike."

6. WP Thyroid is advertised as a "minimal-ingredient, natural hormone replacement treatment for hypothyroidism … WP Thyroid is simply pure, all-natural and consistent.  If your underactive thyroid is keeping you from feeling your best, WP Thyroid may be your solution."

---

[1] *Hypothyroidism FAQs*, AMERICAN THYROID ASSOCIATION, https://www.thyroid.org/hypothyroidism/.

[2] *Hypothyroidism (underactive thyroid)*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/hypothyroidism/symptoms-causes/syc-20350284.

7. RLC also touts that it "is dedicated to supplying the highest quality medications possible, which is why we carefully source thyroid only from the U.S. and Canada. All sourced materials comply with the mandated government standards of their respective countries of origin and meet all requirements set by the [U.S. Department of Agriculture]."

8. RLC represents that its Nature-Throid tablets contain 38 mcg levothyroxine (T4) and 9 mcg liothyronine (T3) per each 65-milligram tablet.[3]

9. RLC represents that its WP Thyroid tablets contain 38 mcg levothyroxine (T4) and 9 mcg liothyronine (T3) per each 65-milligram tablet.[4]

10. On August 25, 2020, RLC announced that it was "recall[ing] all unexpired lots of Nature-Throid® (Thyroid USP Tablets) and WP Thyroid® (Thyroid USP Tablets) that are currently in commercial distribution."[5] This amounted to 483 lots of the Thyroid Tablets.[6]

11. The Thyroid Tablets were recalled after FDA testing found samples to be subpotent. "The product may have as low as 87% of the labeled amount of Liothyronine (T3) or Levothyroxine (T4)."[7]

12. The FDA warned that "[p]atients being treated for hypothyroidism (underactive thyroid), who receive sub potent Nature-Throid® or WP Thyroid®, may experience signs and

---

[3] NATURE-THROID (THYROID) – FULL PRESCRIBING INFORMATION, https://www.pdr.net/full-prescribing-information/Nature-Throid-thyroid-496.

[4] WP THYROID (THYROID) – FULL PRESCRIBING INFORMATION, https://www.pdr.net/full-prescribing-information/WP-Thyroid-thyroid-3202.

[5] VOLUNTARY RECALL INFORMATION, https://getrealthyroid.com/voluntary-recall-information.html.

[6] RLC LABS, INC., ISSUES VOLUNTARY NATIONWIDE RECALL OF ALL LOTS OF NATURE-THROID® AND WP THYROID® WITH CURRENT EXPIRY DUE TO SUB POTENCY, https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/rlc-labs-inc-issues-voluntary-nationwide-recall-all-lots-nature-throidr-and-wp-thyroidr-current.

[7] *Id.*

3

symptoms of hypothyroidism (underactive thyroid) which may include, fatigue, increased sensitivity to cold, constipation, dry skin, puffy face, hair loss, slow heart rate, depression, swelling of the thyroid gland[,] and/or unexplained weight gain or difficulty losing weight."[8]

13. Plaintiffs and the Class were injured by the purchase price of their Thyroid Tablets. These medications are worthless, or worth significantly less than what Plaintiff and Class members paid for them, because the Thyroid Tablets are subpotent and are therefore ineffective to treat hypothyroidism. This is underscored by RLC's voluntary recall of "all unexpired lots of Nature-Throid® (Thyroid USP Tablets) and WP Thyroid® (Thyroid USP Tablets) that are currently in commercial distribution."

14. Had Plaintiff and Class members been aware of the sub potency issue, they would not have purchased the Thyroid Tablets, or would have paid significantly less for them. Accordingly, Plaintiff and Class members were injured by the price they paid for the subpotent Thyroid Tablets.

15. Plaintiff brings this action on behalf of the Class for equitable relief and to recover damages and restitution for: (i) breach of express warranty, (ii) breach of the implied warranty of merchantability, (iii) violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*, (iv) unjust enrichment, (v) negligence, (vi) gross negligence, and (vii) conversion.

## PARTIES

16. Plaintiff Cara Truax is a citizen of Florida who resides in Lake County, Florida. During all relevant time periods, while in Florida, Ms. Truax was prescribed, purchased, and consumed Nature-Throid manufactured and distributed by Defendant RLC. Ms. Truax paid

---

[8] *Id.*

4

$150 for each 90-day supply of Nature-Throid 130 milligram tablets.  Ms. Truax originally learned about the Thyroid Tablets recall by receiving a letter dated September 9, 2020 from her pharmacy, CVS, which informed her that RLC was recalling her medication "because certain lots of these products were tested and found to be subpotent, or to contain less than the required 90% active ingredient, which could be a health hazard or safety risk to patients using product affected by this recall.  The risks posed by potentially sub-potent products are that the patients' symptoms may be uncontrolled."  Ms. Truax has been using Thyroid Tablets distributed by RLC.  When purchasing her Thyroid Tablets from Defendant, Ms. Truax reviewed the accompanying labels and disclosures, and understood them as representations and warranties by the manufacturer, distributor, and pharmacy that the medications were properly manufactured and contained the appropriate level of thyroid.  Ms. Truax relied on these representations and warranties in deciding to purchase her Thyroid Tablets from Defendant, and these representations and warranties were part of the basis of the bargain, in that she would not have purchased her Thyroid Tablets from Defendant if she had known that they were not, in fact, properly manufactured and were subpotent.  Ms. Truax also understood that each purchase involved a direct transaction between herself and RLC, because her medication came with packaging and other materials prepared by RLC, including representations and warranties that her medications were properly manufactured and free from adulteration and defects.

      17.     Defendant RLC Labs, Inc. is a corporation incorporated under the laws of Arizona with a principal place of business in Arizona.  Defendant conducts substantial business in the United States, including in the state of Florida.  Defendant has been engaged in the manufacturing, sale, and distribution of subpotent Thyroid Tablets in the United States, including the state of Florida.

## JURISDICTION AND VENUE

18. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

19. This Court has personal jurisdiction over Defendant because Defendant conducts substantial business in and has sufficient contacts with this District such that Defendant could reasonably foresee litigation being brought against it in this District. Additionally, Plaintiff's purchases of the Thyroid Tablets at issue occurred in this District.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to this action occurred in this District, including but not limited to Plaintiff's purchase of the Thyroid Tablets at issue.

## CLASS ALLEGATIONS

21. Plaintiff seeks to represent a class defined as all persons in the United States who purchased or paid for Thyroid Tablets that are subject to RLC's recall or were subpotent (the "Class"). Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and any of its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

22. Plaintiff also seeks to represent a subclass consisting of Class members who

reside in Florida (the "Subclass").

23.   Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class and Subclass may be expanded or narrowed by amendment or amended complaint.

24.   **Numerosity.**  The members of the Class and Subclass are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are thousands of members in the Class and Subclass.  Although the precise number of Class and Subclass members is unknown to Plaintiff, the true number of Class and Subclass members is known by Defendant and may be determined through discovery.  Class and Subclass members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

25.   **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, the following:

   (a)   whether the Thyroid Tablets manufactured, distributed, and sold by Defendant were in fact subpotent;

   (b)   whether Defendant knew or should have known that the Thyroid Tablets were in fact subpotent;

   (c)   whether Defendant unlawfully converted money from Plaintiff and the Class and Subclass

   (d)   whether Defendant is liable to Plaintiff and the Class and Subclass for unjust enrichment;

   (e)   whether Defendant is liable to Plaintiff and the Subclass for violations of Florida's consumer protection law; and

7

  (f) whether Plaintiff and the Class and Subclass are entitled to damages, and the proper measure for such damages.

26. **Typicality.**  Plaintiff's claims are typical of the claims of the other members of the Class in that, among other things, all Class and Subclass members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.  Further, there are no defenses available to Defendant that are unique to Plaintiff.

27. **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the interests of the Class and Subclass.  Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class and Subclass.  Furthermore, Plaintiff has no interests that are antagonistic to those of the Class or Subclass.

28. **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class and Subclass members are relatively small compared to the burden and expense of individual litigation of her claims against Defendant.  It would, thus, be virtually impossible for the Class or Subclass on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if Class or Subclass members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties

under the circumstances.

29. In the alternative, the Class and Subclass may also be certified because:

(a) the prosecution of separate actions by individual Class and Subclass members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the Defendant;

(b) the prosecution of separate actions by individual Class and Subclass members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede her ability to protect her interests; and/or

(c) Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

## COUNT I
### Breach Of Express Warranty
### (On Behalf Of The Class And Subclass)

30. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-29 above.

31. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

32. Plaintiff, and each member of the Class and Subclass, formed a contract with Defendant at the time Plaintiff and the other Class and Subclass members purchased the subpotent Thyroid Tablets. The terms of the contract include the promises and affirmations of fact made by Defendant on the Thyroid Tablets' packaging and through marketing and advertising, including that the product would contain the proper dose or amount of levothyroxine and liothyronine.

33. This labeling, marketing, and advertising constitutes express warranties that became part of the basis of the bargain, and are part of the standardized contract between Plaintiff and the members of the Class and Subclass and Defendant.

34. Plaintiff and members of the Class and Subclass relied on the express warranty that their medication would contain what was stated on the label, and would not be subpotent.

35. Defendant breached express warranties about the subpotent Thyroid Tablets and their qualities because Defendant's statements about the subpotent Thyroid Tablets were false and the subpotent medications do not conform to Defendant's affirmations and promises described above.

36. Plaintiff and each of the members of the Class and Subclass would not have purchased the Thyroid Tablets, or would have paid significantly less for them, had they known the true nature of the subpotent medication's ingredients and what the medication contained.

37. As a result of Defendant's breach of express warranties, Plaintiff and each member of the Class and Subclass have been damaged in the amount of the purchase price of the Thyroid Tablets and any consequential damages resulting from the purchases.

38. On September 18, 2020, prior to filing this action, Defendant was served with a pre-suit notice letter that complied in all respects with U.C.C. §§ 2-313, 2-607.  Plaintiff's counsel sent Defendant a letter advising that it breached an express warranty and demanded that it cease and desist from such breaches and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff's counsel's letter is attached hereto as **Exhibit A**.

## COUNT II
### Breach Of Implied Warranty
### (On Behalf Of The Class And Subclass)

39. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-29 above.

40. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

41. Defendant, as the designer, manufacturer, marketer, distributor, and/or sellers, impliedly warranted that the Thyroid Tablets (i) were not subpotent and (ii) contained the appropriate amounts of levothyroxine and liothyronine necessary for treating hypothyroidism.

42. Defendant breached the warranty implied in the contract for the sale of the subpotent Thyroid Tablets because they could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose because the Thyroid Tablets manufactured, distributed, and sold by Defendant were subpotent, and as such are not effective to treat hypothyroidism. As a result, Plaintiff and Class and Subclass members did not receive the goods as impliedly warranted by Defendant to be merchantable.

43. Plaintiff and Class and Subclass members purchased the Thyroid Tablets in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

44. The Thyroid Tablets were not altered by Plaintiff or Class or Subclass members.

45. The Thyroid Tablets were defective when they left the exclusive control of Defendant.

46. Defendant knew that the Thyroid Tablets would be purchased and used without additional testing by Plaintiff and Class and Subclass members.

47. The subpotent Thyroid Tablets were defectively manufactured and unfit for their intended purpose, and Plaintiff and Class and Subclass members did not receive the goods as warranted.

48. As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and Class and Subclass members have been injured and harmed because: (a) they would not have purchased the Thyroid Tablets on the same terms if they knew that the products were subpotent and therefore not effective to treat hypothyroidism; and (b) the Thyroid Tablets do not have the characteristics, ingredients, uses, or benefits as promised by Defendant.

## COUNT III
### Violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*
### (On Behalf Of The Subclass)

49. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-29 above.

50. Plaintiff brings this claim individually and on behalf of the members of the proposed Subclass against Defendant.

51. Defendant violated Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201 *et seq.*, by engaging in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of their business. "Deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003).

52. FDUTPA is, "a consumer protection law intended to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the course of any trade or commerce." *Tuckish v. Pompano Motor Co.*, 337 F. Supp. 2d 1313, 1319 (S.D. Fla. 2004); Fla. Stat. § 501.202.  In the interests of consumer protection, FDUTPA should be "liberally construed." *Samuels v. King Motor Co.*, 782 So. 2d 489, 499 (Fla. 4th Dist. Ct. App. 2001).

53. Plaintiff and members of the Subclass are consumers within the meaning of FDUTPA.

54. The Thyroid Tablets are goods within the meaning of FDUTPA.

55. Defendant is engaged in trade or commerce within the meaning of FDUTPA.

56. The material misrepresentations and omissions alleged herein constitute deceptive and unfair trade practices in that they were intended to and did deceive Plaintiff and the general public into believing that the Thyroid Tablets contained the requisite amount of liothyronine and levothyroxine necessary to treat hypothyroidism when, in fact, the Thyroid Tablets were subpotent.

57. The advertising and labeling discussed in detail above is likely to, and does, mislead reasonable consumers.

58. Unlike common law fraud, subjective evidence of reliance on the part of each putative Class member is not required under FDUPTA.  *See Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. 1st Dist. Ct. App. 2000); *Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 692 (S.D. Fla. 2010).  Thus, "the question is not whether the plaintiff actually relied on the alleged deceptive trade practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstance." *Davis*, 776 So. 2d at 974.  Nevertheless, Plaintiff and

members of the Subclass relied on Defendant's statements, believing that the Thyroid Tablets contained the requisite amount of liothyronine and levothyroxine necessary to treat hypothyroidism.

59. Had Plaintiff and the Subclass members known that the Thyroid Tablets were subpotent and ineffective, they would not have purchased the Thyroid Tablets or would not have purchased the Thyroid Tablets on the same terms.

60. As a result of Defendant's deceptive and unfair acts, Plaintiff and the Subclass members have been damaged in the amount of the purchase price of the Thyroid Tablets or the difference between the price premium paid for the Thyroid Tablets and the price they would have paid had they known that the Thyroid Tablets did not have the qualities as advertised.

61. Defendant's conduct offends established public policy and is substantially injurious to consumers. Defendant's practices as described herein are of no benefit to consumers who are tricked into believing that the Thyroid Tablets contained the requisite amount of liothyronine and levothyroxine necessary to treat hypothyroidism. In fact, Defendant's practices are dangerous because consumers who use subpotent thyroid medications risk experiencing symptoms of hypothyroidism, including fatigue, increased sensitivity to cold, constipation, dry skin, puffy face, hair loss, slow heart rate, depression, swelling of the thyroid gland, and unexplained weight gain or difficulty losing weight.

62. Plaintiff and Subclass members are entitled to damages in an amount to be proven at trial, but not less than either the purchase price of the Thyroid Tablets or the difference between the price premium paid for the Thyroid Tablets and the price Plaintiff and Subclass members would have paid had they known that the Thyroid Tablets were not as advertised. The price Plaintiff and Subclass members would have paid is no more than the market value of the

Thyroid Tablets, had Plaintiff and Subclass members known that the Thyroid Tablets do not perform as advertised.

63. The damages suffered by Plaintiff and Subclass members were directly and proximately caused by the deceptive, misleading, and unfair practices of Defendant, as described herein.

64. Pursuant to Fla. Stat. § 501.211(1), Plaintiff and the Subclass seek a declaratory judgment and court order enjoining the above-described wrongful acts and practices of Defendant, as well as for restitution and disgorgement.

65. In addition, pursuant to Fla. Stat. §§ 501.211(2), and 501.2105, Plaintiff and the Subclass make claims for damages, attorneys' fees, and costs.

## COUNT IV
## Unjust Enrichment
### (On Behalf Of The Class And Subclass)

66. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-29 above.

67. Plaintiff brings this claim individually and on behalf of the members of the Class and Subclass against Defendant.

68. Plaintiff and the Class and Subclass conferred a direct benefit on Defendant in the form of monies paid to purchase Defendant's subpotent Thyroid Tablets.

69. Defendant voluntarily accepted and retained this benefit.

70. Because this benefit was obtained unlawfully, namely by selling and accepting compensation for subpotent medications ineffective to treat hypothyroidism, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

**COUNT V**
**Negligence**
**(On Behalf Of The Class And Subclass)**

71. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-29 above.

72. Plaintiff brings this claim individually and on behalf of the members of the Class and Subclass against Defendant.

73. Defendant owed a duty of care to Plaintiff to manufacture, distribute, and sell the subject Thyroid Tablets free from defects.

74. Defendant breached that duty by manufacturing, distributing, and selling subpotent Thyroid Tablets.

75. Plaintiff and Class and Subclass members were injured by ingesting a subpotent prescription medication, which was manufactured, distributed, and sold by Defendants. Plaintiff and Class and Subclass members also suffered economic damages from the purchase of their Thyroid Tablets.

76. Importantly, Plaintiff and the Class members do not seek resolution of downstream effects such as the symptoms of untreated hypothyroidism and other individualized illnesses on a class-wide basis. Any such actions can and should be redressed on an individual basis as they arise. However, because of the subpotency of the Thyroid Tablets, Plaintiff and Class and Subclass members suffered a concrete and identical harm that can and should be addressed on a class-wide basis (*i.e.*, the purchase price of their medications).

77. Because the Thyroid Tablets manufactured, distributed, and sold by Defendant were subpotent and ineffective, which constituted a breach of Defendant's duty to Plaintiff and Class and Subclass members, Defendant is negligent and are liable to Plaintiff and Class and

Subclass for all injuries proximately caused by Defendant's negligence.

**COUNT VI**
**Gross Negligence**
**(On Behalf Of The Class And Subclass)**

78. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-29 above.

79. Plaintiff brings this claim individually and on behalf of the members of the Class and Subclass against Defendant.

80. Defendant owed a duty of care to Plaintiff to manufacture, distribute, and sell the subject Thyroid Tablets free from defects.

81. Defendant breached that duty by manufacturing, distributing, and selling subpotent Thyroid Tablets.

82. Plaintiff and Class and Subclass members were injured by ingesting a subpotent prescription medication, which was manufactured, distributed, and sold by Defendants. Plaintiff and Class and Subclass members also suffered economic damages from the purchase of their Thyroid Tablets.

83. Importantly, Plaintiff and the Class members do not seek resolution of downstream effects such as the symptoms of untreated hypothyroidism and other individualized illnesses on a class-wide basis. Any such actions can and should be redressed on an individual basis as they arise. However, because of the subpotency of the Thyroid Tablets, Plaintiff and Class and Subclass members suffered a concrete and identical harm that can and should be addressed on a class-wide basis (*i.e.*, the purchase price of their medications).

84. Defendant's conduct evinces a reckless disregard for the rights of others, and strongly suggests intentional wrongdoing.

85.     Because the Thyroid Tablets manufactured, distributed, and sold by Defendant were subpotent and ineffective, which constituted a breach of Defendant's duty to Plaintiff and Class and Subclass members, Defendant is negligent and are liable to Plaintiff and Class and Subclass for all injuries proximately caused by Defendant's gross negligence.

## COUNT VII
### Conversion
### (On Behalf Of The Class And Subclass)

86.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-29 above.

87.     Plaintiff brings this claim individually and on behalf of the members of the Class and Subclass against Defendant.

88.     Plaintiff and the Class and Subclass have an ownership right to the monies paid for the subpotent Thyroid Tablets manufactured, distributed, and sold by Defendant.

89.     Defendant has wrongly asserted dominion over the payments illegally diverted to them for the subpotent medication.  Defendant has done so every time that Plaintiff and the Class and Subclass have paid to have their prescriptions filled.

90.     As a direct and proximate cause of Defendant's conversion, Plaintiff and the Class and Subclass suffered damages in the amount of the payments made for each time they filled their prescriptions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)     For an order certifying the Class and Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass;

(b) For an order finding in favor of Plaintiff and the Class and Subclass on all counts asserted herein;

(c) For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(d) For prejudgment interest on all amounts awarded;

(e) For an order of restitution and all other forms of equitable monetary relief;

(f) For injunctive relief as pleaded or as the Court may deem proper; and

(g) For an order awarding Plaintiff and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: September 21, 2020

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Sarah N. Westcot*
    Sarah N. Westcot

Sarah N. Westcot (FBN: 1018272)
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com

**BURSOR & FISHER, P.A.**
Neal J. Deckant (*Pro hac vice app. forthcoming*)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ndekant@bursor.com

*Attorneys for Plaintiff*